[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15245
Non-Argument Calendar
_____

D.C. Docket No. 2:12-cr-00140-MEF-WC-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

QUENTIN COLLICK,
DEATRICE SMITH WILLIAMS,

Defendants-Appellants.


_____

Appeals from the United States District Court
for the Middle District of Alabama
_____


(May 6, 2015)

Before HULL, MARCUS and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Following a jury trial, Defendants Quentin Collick and Deatrice Smith Williams were convicted of multiple charges stemming from a tax fraud scheme. Specifically, Defendant Collick was convicted of one count of conspiracy to defraud the government, 18 U.S.C. § 286; three counts of theft of public money, 18 U.S.C. §§ 641, 642; three counts of aggravated identity theft, 18 U.S.C. § 1028A(a)(1), (c)(1); and three counts of wire fraud, 18 U.S.C. § 1343. Defendant Deatrice Smith Williams was convicted of one count of conspiracy to defraud the government, 18 U.S.C. § 286; three counts of wire fraud, 18 U.S.C. § 1343; and three counts of aiding and abetting aggravated identity theft, 18 U.S.C. §§ 1028A(a)(1) and 2.

On appeal, Defendant Collick challenges only his convictions, arguing that the district court erred in denying his motion for a judgment of acquittal on all counts and that his convictions should be vacated because of alleged juror misconduct. Defendant Smith Williams challenges only her total 51-month sentence, arguing that the district court erred in applying a sophisticated means enhancement under U.S.S.G. § 2B1.1. After review, we affirm the Defendants' convictions and sentences.

## I. MOTION FOR JUDGMENT OF ACQUITTAL

The district court did not err in denying Defendant Collick's motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 based on

2

insufficient evidence.[1]  First, the testimony of Corey Thompson, the Defendants'

co-conspirator, established that Defendant Collick voluntarily participated in a

conspiracy to defraud the government by committing tax fraud.  See United States

v. Gupta, 463 F.3d 1182, 1194 (11th Cir. 2006) (stating that to sustain a conviction

for conspiracy to defraud the government under 18 U.S.C. § 286, the government

must prove "the existence of an agreement to achieve an unlawful objective, the

defendant's knowing and voluntary participation in the conspiracy, and the

commission of an overt act in furtherance of it" (quotation marks omitted)).

Specifically, Thompson testified that he and Defendant Collick agreed to file

fraudulent tax returns over the internet using stolen identities and thereby obtain

other individuals' refund checks.  Thompson's testimony further established that

Defendant Collick committed acts in furtherance of the conspiracy, such as: (1)

obtaining stolen identities from his mother-in-law, Defendant Smith Williams, who

had access to identifying information through her work at a medical debt collection

business, Hollis Cobb Associates; (2) buying prepaid debit cards in the name of the

stolen identities so that tax refunds from the false returns could be deposited

directly on the cards; and (3) providing mailing addresses to receive prepaid cards

---

[1]We review de novo the district court's denial of a Rule 29 motion for judgment of acquittal, viewing all the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the jury's verdict.  United States v. Hunt, 526 F.3d 739, 744 (11th Cir. 2008). We will not overturn a guilty verdict "if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." United States v. Rodriguez, 732 F.3d 1299, 1303 (11th Cir. 2013).

and refund checks, including an address on Hinchcliff Road.  Thompson, meanwhile, learned how to use the stolen identities Defendant Collick obtained from Defendant Smith Williams to create fraudulent paperwork and to file false tax returns and then taught Defendant Collick how to file the false returns.  Thompson, who worked as a cable and internet installer, also rerouted his and Defendant Collick's internet traffic through other IP addresses while they were filing the false tax returns so that it would appear the returns were being filed by someone else.  This evidence was more than sufficient to support Defendant Collick's conspiracy conviction.

Given that Thompson testified that he and Defendant Collick used the internet to perpetrate their scheme, his testimony also established that Collick committed wire fraud.  See United States v. Ward, 486 F.3d 1212, 1221-22 (11th Cir. 2007) (stating that an 18 U.S.C. § 1343 conviction for wire fraud requires evidence that the defendant (1) intentionally participated in a scheme to defraud another of property, and (2) used or caused the use of wires to execute the scheme to defraud).

Further, Defendant Collick's convictions for theft of government money were supported by Thompson's testimony and the testimony of Ryan McCommons and Jennifer Simmons, two victims of the fraud scheme.  See United States v. McRee, 7 F.3d 976, 980 (11th Cir. 1993) (en banc) (stating that to support an 18

4

U.S.C. § 641 conviction, the government must prove that (1) the money or property belonged to the government; (2) the defendant fraudulently appropriated the money or property for his own use or the use of others; and (3) the defendant did so knowingly and willfully with the intent to either temporarily or permanently deprive the owner of the use of the money or property).  According to Thompson, he and Defendant Collick filed fraudulent tax returns in the names of both McCommons and Simmons, among others, using Defendant Collick's Hinchcliff Road address.  McCommons and Simmons testified that, as a result of the false returns and their forged signatures on the refund checks, they were deprived of the government refunds actually owed to them.

In turn, the evidence of Defendant Collick's theft of government money, in conjunction with the evidence that Defendant Collick used stolen identities he obtained from Defendant Smith Williams, supported Defendant Collick's convictions for aggravated identity theft.  See United States v. Barrington, 648 F.3d 1178, 1192 (11th Cir. 2011) (stating that to prove a violation of 18 U.S.C. § 1028A(a)(1), aggravated identity theft, the evidence must establish that the defendant (1) knowingly transferred, possessed, or used; (2) the means of identification of another; (3) without lawful authority; (4) during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c), one of which is theft of government money in violation of 18 U.S.C. § 641).

5

Defendant Collick's challenge to the sufficiency of the evidence rests entirely on his argument that Thompson's testimony was not credible. Credibility determinations, however, are left to the jury, and we assume the jury resolved any credibility evaluations in favor of the verdict. Gupta, 463 F.3d at 1194. The fact that Thompson stood to benefit from his testimony, has lied in the past, and has engaged in criminal behavior does not make his testimony per se incredible. See United States v. Thompson, 422 F.3d 1285, 1291 (11th Cir. 2005). Thompson's testimony was plausible on its face, coherent, and consistent and could not be considered incredible as a matter of law. See id. (explaining that to be considered incredible as a matter of law, the testimony must be about facts that the witness could not possibly have observed or that defy the laws of nature).

Moreover, Thompson's testimony was amply corroborated by other witnesses, including Kimberly Curry, who testified that she agreed to let Defendant Collick have mail sent to her Hinchcliff Road address and that she did not recognize the names on any of the refund checks that were later sent to that address. In addition, Curry's mother, Cassandra Shepard, testified that after she returned some of the mysterious refund checks being sent to the Hinchcliff Road address to the Internal Revenue Service, Defendant Collick called and asked about the mail, and Shepard told him what she had done. Finally, Kelly O'Donnell, the office manager at Hollis Cobb Associates, testified that Defendant Collick's

6

mother-in-law, Defendant Smith Williams, used the company's database to access the patient accounts of McCommons and Simmons, along with other individuals who had their identities stolen.

While Defendant Collick contends he was an unwitting participant in Thompson's scheme, the evidence, viewed in the light most favorable to the government, amply showed that Collick knowingly and willfully joined the scheme. Because the government's evidence was sufficient for a reasonable jury to convict Defendant Collick on all counts, the district court did not err in denying his Rule 29 motion.

## II. JUROR MISCONDUCT

Defendant Collick argues that he should be granted a new trial based on juror misconduct that violated his Fifth Amendment right not to testify.[2] The only evidence Collick offers to show juror misconduct, however, is an evaluation form completed by one of the jurors after the trial, which Collick argues indicates that

---

[2]We review for an abuse of discretion a district court's decision not to grant a new trial based on alleged juror misconduct. United States v. Siegelman, 640 F.3d 1159, 1181 (11th Cir. 2011). The government asserts that we should review Defendant Collick's juror misconduct claim only for plain error because Collick did not seek a new trial before the district court on this basis. We need not resolve this issue because Collick's juror misconduct claim fails under either standard of review.

the juror's determination of guilt was influenced by Collick's decision not to testify.[3]

Such evidence is excluded under Federal Rule of Evidence 606, which prohibits evidence of, inter alia, a juror's statements about the juror's "mental processes concerning the verdict." See Fed. R. Evid. 606(b)(1); United States v. Siegelman, 640 F.3d 1159, 1185 (11th Cir. 2011) (explaining that "the Supreme Court has recognized "a near-universal and firmly established common-law rule flatly prohibiting the use of juror testimony to impeach a verdict," which is now codified in Rule 606(b)). Although Rule 606 contains several exceptions, Collick does not contend that any of them apply. See Fed. R. Evid. 606(b)(2) (permitting juror testimony about whether (1) extraneous prejudicial information was improperly brought to the jury's attention; (2) an outside influence was improperly brought to bear on any juror; or (3) a mistake was made on the verdict form). Accordingly, Collick has not shown any basis for vacating his convictions and granting him a new trial.

### III.  SOPHISTICATED MEANS ENHANCEMENT

Defendant Smith Williams challenges the district court's application of a two-level sophisticated means enhancement, pursuant to U.S.S.G. § 2B1.1(b), based on her co-conspirators' relevant conduct.[4]

---

[3]On the comments portion of the juror evaluation form, the juror wrote, "I think Collick needed to have said something.  Not saying anything made him look guilty."

A defendant's offense level is increased by two levels if she used sophisticated means during either the execution or concealment of the offense conduct.  U.S.S.G. § 2B1.1(b)(10)(C).  "Sophisticated means" refers to especially complex or intricate conduct.  Id. § 2B1.1 cmt. n.9(B).  Where, as here, the offense involves a criminal conspiracy, the advisory guidelines calculations are based on all relevant conduct, which includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity."  Id. § 1B1.3(a)(1)(B).

Here, Defendant Smith Williams does not dispute that Collick and Thompson's use of prepaid debit cards, other people's mailing addresses, and other computer IP addresses constituted "sophisticated means" in furtherance of the tax fraud conspiracy.  Rather, Defendant Smith Williams contends that their actions were not reasonably foreseeable to her because she did not understand how they would carry out the tax fraud.

The problem for Defendant Smith Williams is that the district court found by a preponderance of the evidence that she actually knew of the means used by Thompson and Collick to file the false tax returns because she traveled to Alabama

---

[4]In reviewing a sophisticated means enhancement, we review the district court's fact findings for clear error and its application of the guideline provision to those facts de novo. United States v. Humber, 255 F.3d 1308, 1311 (11th Cir. 2001). Whether a co-conspirator's acts are reasonably foreseeable to the defendant as relevant conduct is a fact finding reviewed for clear error.  United States v. Cover, 199 F.3d 1270, 1274 (11th Cir. 2000).

9

to learn how to file the false tax returns for herself.  This finding is supported by the record.  Specifically, at trial, Thompson testified that, during one of his trips with Collick to collect refund checks, Collick said that his mother-in-law, Defendant Smith Williams, was planning to visit so she could learn from Collick how to file false tax returns using stolen identities.

There is no merit to Defendant Smith Williams' argument that the means Thompson and Collick used were too technologically advanced to be reasonably foreseeable.  A defendant need not have fully understood the precise means used for those means to be reasonably foreseeable.  It is sufficient that Defendant Smith Williams was aware of the sophisticated means being used by her co-conspirators. Thus, the district court properly applied the sophisticated means enhancement in calculating Defendant Smith Williams's advisory guidelines range.

For these reasons, we affirm the Defendants' convictions and sentences.

**AFFIRMED.**